UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT JAMES KEATON,

    Plaintiff,

v.                                                       Case No. 3:22-cv-311-MMH-LLL

JAMES CARTWRIGHT, et al.,

    Defendants.

## ORDER

### I. Status

Plaintiff Robert James Keaton, an inmate of the Florida Department of Corrections (FDOC), initiated this action by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. He is proceeding on an Amended Complaint (Doc. 25; Amended Complaint). Keaton names seven Defendants: (1) James B. Cartwright; (2) Anthony L. Smith; (3) Ryan D. Mason; (4) Quinton M. Williams; (5) John M. Manning; (6) Lyndell B. Hampton; and (7) Charles C. Bias. Id. at 2-3. He asserts claims of excessive force and failure to intervene. See generally id.

This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint (Doc. 35; Motion). Keaton filed a response to the Motion (Doc. 36; Response). The Motion is ripe for review.

## II. Keaton's Allegations[1]

Keaton alleges that in June of 2018, he had surgery on his left eye to repair a detached retina. Amended Complaint at 4. Following the surgery, officials transported him to Union Correctional Institution to recover. Id. About a month after his transfer, in July of 2018, Keaton attempted suicide by sharpening his glasses lens and consuming parts of the glass. Id. During the attempt, officers used chemical agents to restrain Keaton and eventually escorted him to a decontamination shower and medical where a registered nurse administered an ETO (emergency treatment order) shot to sedate Keaton. Id. at 5. After medical staff completed Keaton's evaluation and treatment, officials took Keaton to an isolation management room where he slept. Id.

The next day, officers woke Keaton up and ordered him to move his state-issued mattress from the floor to the bunk. Id. Keaton followed these orders and immediately went back to sleep. Id. According to Keaton, around 1:30 p.m. that day, while he was still asleep on his bunk, Defendant Smith ordered Defendants Manning, Williams, Hampton, Bias, and Cartwright to enter

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Keaton, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

Keaton's cell and perform a cell extraction. Id. During the extraction, Manning, Williams, Hampton, Bias, and Cartwright "violently punch[ed] [Keaton] in the head and facial area" while "repeatedly yelling for [Keaton] to stop resisting." Id. at 6. Keaton asserts he neither tried to resist nor did he fail to follow Defendant Smith's earlier orders to move his mattress to the bunk, which Defendants contend justified this use of force. Id. Once Keaton was restrained, officers escorted him to medical for a post-use-of-force exam that Keaton voluntarily refused. Id. at 6.

Officers then escorted Keaton back to his cell. Id. Once in his cell, Keaton states he refused to "relinquish" his hands for removal of the restraints. Id. at 6-7. Defendant Smith gave Keaton a "final order" to allow removal of the handcuffs and Keaton again refused. Id. at 7. According to Keaton, ten seconds after the "final order," Defendants Manning, Williams, Hampton, Bias, and Cartwright again entered Keaton's cell for a second "organized use of force." Id. Keaton contends he was not afforded the required three-minute window to follow Smith's "final order" before the second use of force. Id. He alleges Manning, Williams, Hampton, Bias, and Cartwright slammed his head against the floor, punched him in the face, and stuck their fingers in his right eye, trying to gouge it out. Id.

According to Keaton, Defendants Smith and Mason were present for both cell extractions but did not intervene in or stop either excessive use of physical

force. Id. Following the second use of force, medical staff examined Keaton's injuries and noted he sustained a swollen right eye and a bloody mouth. Id. Keaton declared a medical emergency for his eye injury a few days later, and after seeing an ophthalmologist, he learned an area of his repaired retina had become re-detached. Id. at 8. Keaton was later diagnosed as blind in his left eye. Id. at 9. He asserts Defendants' actions violated his rights under the Eighth Amendment. Id. at 3. As relief, Keaton requests compensatory and punitive damages, as well as a declaratory judgment "stating that the acts and omissions described herein violated [his] rights under the constitution and the laws of the United States." Id. at 9.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will,

therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

### IV.   Discussion

Defendants raise two arguments in their Motion. First, they argue that Keaton's request for declaratory relief should be dismissed because he cannot seek declaratory relief against Defendants based on past conduct. Motion at 5-6. In his Response, Keaton merely argues he "is seeking a declaratory judgment against Defendants for their actions on July 11, 2018 and not for their past conduct"; and thus, "if this Court determines that there is an 'actual controversy' between the parties . . . then a declaratory judgment can issue." Response at 2.

Keaton has not sufficiently alleged standing to seek declaratory relief.[2] "'[T]o demonstrate that a case or controversy exists to meet the Article III

---

[2] The Court notes that Defendants do not make this argument in terms of standing but instead cite cases analyzing declaratory relief under the Ex parte Young doctrine. Motion at 5-6. In any event, the Court can consider standing sua sponte whenever it may be lacking.

standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" Worthy v. City of Phenix City, Ala., 930 F.3d 1206, 1215 (11th Cir. 2019) (quoting Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999)). "Logically, 'a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.'" Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (quoting Am. Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992)). Here, Keaton's allegations involve events that occurred entirely in the past while he was housed at a correctional facility at which he is no longer incarcerated. See Florida Department of Corrections, Corrections Offender Network (available at www.fdc.myflorida.com/offendersearch) (last visited Jan. 3, 2024). He has not alleged facts showing he is likely to have another encounter with a named Defendant under circumstances like those giving rise to his past injuries. See Coker v. Warren, 660 F. Supp. 3d 1308, 1326 (M.D. Fla. Mar. 2, 2023) (dismissing the plaintiff's claim for declaratory and injunctive relief because she did not plead sufficient facts showing any ongoing or future harm for such prospective relief). As such, because Keaton has not alleged facts showing an ongoing or future harm, his request for a declaratory judgment is due to be dismissed and the Motion is due to be granted on this issue.

Second, Defendants argue Keaton's claims for monetary damages against them in their official capacities should be dismissed, because they are entitled to Eleventh Amendment immunity. Motion at 6-8. In his Response, Keaton explains he is suing all Defendants in their individual capacities but argues "[t]o the extent that [D]efendants claim that they were acting in their official capacities, they still are not protected by the Eleventh Amendment." Response at 3.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well-settled that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276 (1986) (quotation marks and citation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble,[3] 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity. Id. Here, the Eleventh Amendment bars suit to the extent that Keaton seeks monetary damages from Defendants in their official capacities. Therefore, Defendants' Motion is due to be granted on that basis. Keaton's request for monetary damages against Defendants in their individual capacities will proceed.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Defendants' Motion to Dismiss Amended Complaint (Doc. 35) is **GRANTED**. Keaton's claims for declaratory relief and his claims for monetary damages against Defendants in their official capacities are **DISMISSED**.

2. Defendants must file an answer to the Amended Complaint (Doc. 25) by **February 12, 2024**.

---

[3] Gamble v. Fla. Dep't of Health & Rehab. Serv., 779 F.2d 1509 (11th Cir. 1986).

3. The Court will enter a separate order setting case management deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of January, 2024.

MARCIA MORALES HOWARD
United States District Judge

Jax-7

C: Robert James Keaton, #R38757
    Counsel of record